IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA


| | | |
|---|---|---|
| James Corbett, | ) | |
| | ) | CIVIL ACTION NO. 9:09-2494-HMH-BM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Jon Ozmint, David Tatarsky, Rob Peele, | ) | |
| Michael McCall, Steven Claytor, | ) | |
| Florence Mauney, Michael Najjar, Conrad | ) | |
| Buehler, Miriam Cocciolone, each in their | ) | |
| individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action has been filed by the Plaintiff, <u>pro se</u>, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on April 16, 2010. As the Plaintiff is proceeding <u>pro se</u>, a <u>Roseboro</u> order was entered by the Court on April 19, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion on May 27, 2010.



Defendants' motion is now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified complaint[2] that he is an inmate being housed in the Special Management Unit (SMU) at the Perry Correctional Institution, where he is being "denied access to the law library, denied the ability to purchase pens, paper and envelopes from the canteen, and denied the right to receive any books, magazines and newspapers from publishers." Plaintiff alleges that "all of these things are available in the general population . . . ." Plaintiff alleges that the Defendant Buehler is the Education Coordinator at PCI, and that it is his responsibility to provide inmates housed in the SMU with the legal publications they request so that the inmates may carry out legal research. Plaintiff alleges that Buehler's conduct has denied him access to the courts, rendering him "unable to properly litigate pending court cases and as a result . . . said cases were dismissed . . . ." Plaintiff further alleges that after Buehler was terminated from his job as Education Coordinator due to "incompetence", he was replaced by the Defendant Najjar, who "continues in the tradition established by . . . Buehler in denying Plaintiff []" his constitutional rights.

Plaintiff further alleges that the Defendants Buehler, Najjar, McCall, Claytor, and Maundy all violated his constitutional rights by failing to permit him to file legal papers and to

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motion for summary judgment. As this is a dispositive motion this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



communicate freely about legal matters with the courts, lawyers and the media; by failing to allow Plaintiff reasonable access to law books, including up to date law books; by failing to supervise inmate workers to ensure that all law book requests are properly filed; by failing to provide paralegals to assist Plaintiff with his legal cases and/or denying Plaintiff the option to obtain legal help from other prisoners; by failing to provide Plaintiff with sufficient legal research materials and facilities to include access to an adequately stacked and maintained law library; by discriminating against Plaintiff on the basis of "race, religion, nationality, sex, income, political beliefs or other arbitrary categories"; and by failing to take appropriate action in response to notification of Plaintiff's constitutional deprivations and otherwise acting with deliberate indifference to Plaintiff's constitutional rights.

Plaintiff also alleges that the "Defendant" Nancy Merchant[3] "by and thru her agents, employees, and representatives" violated Plaintiff's constitutional rights by failing to follow SCDC policy and procedure in processing Plaintiff's correspondence; by failing to take appropriate action in response to Plaintiff's complaints; by failing to follow specific instructions issued by SCDC's General Counsel; by censoring Plaintiff's mail, and by otherwise conspiring with other Defendants to "maliciously trample Plaintiff's constitutional rights." Plaintiff alleges that as a result of these actions, the Defendants Merchant, Davis,[4] Clayton, Mauney and McCall all caused him to suffer unneeded expenses, irreparable harm, and extreme inconvenience by improperly restricting his First Amendment rights.

---

[3] This individual is not listed as a Defendant in the caption of Plaintiff's Complaint, and has not been served with process.

[4] There is also no Defendant Davis listed in the caption of the Complaint, and no such Defendant has been served with process.



Plaintiff also argues that the Defendants conduct has caused him emotional distress, to the extent that any Defendants are supervisors they engaged in negligent supervision, and that the Defendants defamed him by labeling him as a sex offender on the Department website as well as in their Offender Management System. Plaintiff further alleges that by being labeled as a sex offender, he has been placed in substantial risk of bodily harm and assault by other prisoners.

Plaintiff lists several specific incidents and/or conduct which he contends are actionable. Plaintiff complains that, although pursuant to prison policy an inmate is permitted to send an unlimited amount of legal mail regardless of their indigent status or account balance, the "catch 22" is that supplies for legal mail are limited and the agency does not allow the use of homemade envelopes. Plaintiff further complains that although SCDC policy allows inmate law clerks to assist other inmates with locating information in the law library, no inmate law clerks come to the SMU. Rather, the Defendant Najjar picks up and drops off law books to SMU inmates, but he is not trained in law library research. Plaintiff alleges that he has requested that inmate law clerks be permitted to come to the SMU to assist SMU inmates. Plaintiff also alleges that he is being denied access to the courts because the Department has stopped renewing legal books even though the Defendants know "the law is forever changing . . . ." Plaintiff also complains that, per SCDC policy, an inmate in the SMU can only request up to three law books at a time, but that an inmate cannot conduct meaningful investigation research with only three books a day.

Plaintiff alleges that "without access to up to date law books and more than 3 law books per day to do legal research, Plaintiff will not be able to find out which facts are legally significant, and merit presentation to the court, and which are irrelevant or confusing." Plaintiff further alleges that the Defendant Major "seems to not pass out law books for extraordinary periods



4

of time", and that if Najjar "get too many law book requests he will throw some of them away, or if he doesn't like an inmate he will not fill out all of their requests out of spite."

Plaintiff seeks monetary damages, as well as injunctive relief. See generally, Plaintiff's Verified Complaint.

In an unverified "Amended Complaint" filed October 22, 2009,[5] Plaintiff alleges that on or about February 2008 he wrote to the Defendant Mauney complaining about Buehler not providing him with sufficient materials and law books because he was only being provided three books on Tuesday and Thursday of each week, but that Mauney refused to do anything to "fix the problem". Plaintiff alleges he then wrote the Defendant Tatarsky, who also did nothing. Plaintiff alleges that on March 14, 2008, he again complained to Mauney about Buehler, and that Mauney came to see him and told him that if he wanted to do law work, "then get off lock-up and go to the law library. Then you won't have to worry about it." Plaintiff further alleges that after Buehler was replaced with the Defendant Najjar, the only thing that changed was that inmates in the SMU got law books "a couple more times a week," but that he was still being denied sufficient sheets of paper, pens, and envelopes, while the law books and cases he received were never any newer than June or July 2003.

Plaintiff alleges that he has written Mauney, Claytor, Tartarsky, Peele, McCall, and Cocciolone on "numerous occasions" but that nothing ever gets done. Plaintiff also complains that on one occasion his cell was searched and "his entire box of legal work was confiscated . . . ."

---

[5]Plaintiff has essentially filed this document as an addendum to his original complaint. Since the "amended" complaint is *unverified*, the undersigned has not considered the factual allegations set forth in the unverified Complaint as evidence in issuing a recommendation in this case. Williams, 952 F.2d at 823.



Plaintiff alleges that although he subsequently received most of his legal work back, he did not receive "all of it". Plaintiff alleges that because of the Defendants' conduct he is at a disadvantage in litigating cases and that he has missed out on opportunities to attack his convictions with grounds that could result in reversal. See generally, Amended Complaint.

In support of summary judgment in the case the Defendant Najjar has submitted an affidavit wherein he attests that during the time period relevant to the allegations of Plaintiff's complaint he worked as Education Coordinator at the Perry Correctional Institution. Najjar attests that all inmates at PCI, including inmates housed in the SMU, have access to all materials in the law library at PCI. Najjar attests that the law library maintains books and other legal materials, and that the contents of the law library are monitored by the SCDC General Counsel's Office. Najjar attests that SCDC Policy Number GA-01.03 [Inmate Access to the Courts] lists the books and other legal materials that are contained in the law libraries within the SCDC, and that all of the books/publications outlined in that policy are contained in the law library at PCI. Najjar attests that this is not a restricted policy, meaning that all inmates have access to the policy and can therefore review the list of all legal books and publications contained in the law library and will therefore know what books and publications are in the law library.

Najjar attests that SMU inmates are allowed to check out up to three books or publications at a time, with the process for delivering books to inmates with higher security classifications (including those in the SMU) being outlined in Section 9 of Policy GA-01.03. Pursuant to that policy, inmates complete a request form and place it in the SCDC internal mail, which is in turn delivered to the Education Coordinator on a daily basis. Najjar attests that he would then personally review the request form and that, if available in the law library, would make sure that



6

the requested materials were delivered to the SMU inmate within three business days, although as Education Coordinator he would typically deliver materials to SMU inmates the same day their request form was received. However, since some books/publications are more popular than others a book or publication may not be available if another inmate has already checked out the book. Najjar attests that he always filled an inmate's request as long as the material was available and that he has never thrown away or intentionally disregarded an inmate's request for legal materials.

Najjar further attests that all inmates, including SMU inmates, have access to paper, pen, and envelopes, although because of increased security measures in the SMU, such inmates have certain restrictions on the number of documents they can possess at one time. Najjar attests that every other week SMU inmates are given free of charge an ample supply of paper, envelopes, and one felt tip marker, and that inmates can also purchase additional supplies if they have available funds. Further, if an inmate can demonstrate a need for additional papers or envelopes for legal purposes, then that material is provided even if the inmate has no funds available. Najjar attests that he does not recall ever denying a request from the Plaintiff for additional paper or envelopes.

Najjar attests that there is no limit on the amount of external legal mail that an inmate can send, even if the inmate has no available funds, and that he would also generally allow SMU inmates to make copies of legal documents to be filed with the court if the inmate could show that copies were needed, even if the inmate had no money available in their account. Najjar attests that he does not specifically recall if the Plaintiff ever requested to make any legal copies while he was housed a PCI.

With respect to legal assistance, Najjar attests that there is an inmate worker/law clerk assigned to the law library to assist general population inmates with locating books within the library,

7



although the inmate worker is not allowed to assist with research or legal writing or anything else, only with locating books. Najjar attests that no inmate received assistance from a paralegal or any one else in regard to legal research or writing, other than for locating books. Najjar attests that Section 4 of Policy GA-01.03 outlines the responsibilities of inmate law clerks, and states in part that inmate law clerks are prohibited from giving their personal opinions regarding any inmate's case as well as from typing forms or letters for inmates or providing any other form of legal assistance.

Finally, Najjar has attached as Exhibit B to his affidavit copies of Plaintiff's book requests that were made during his time as Education Coordinator, including the form that he would complete indicating the action taken upon each request. Najjar attests that the attached forms are the only forms available requests for legal materials made by the Plaintiff, with Section 9.6 of Policy GA-01.03 requiring that request forms are to be kept on file by the Department for six months. See generally, Najjar Affidavit, with attached Exhibits.

The Defendant Conrad Buehler has also submitted an affidavit wherein he attests that he formerly worked in the Education Department at PCI, where part of his duties was to make sure that inmates housed in the SMU were able to obtain books from the law library pursuant to SCDC policy. Buehler attests that SCDC Policy GA-01.03 provides that once an inmate housed in the SMU makes a request for materials from the law library, the librarian or his/her designee shall deliver the requested materials within three business days. Buehler attests that when he worked in the Education Department at PCI, he would deliver legal books and other requested materials to SMU inmates every Tuesday and Thursday. Buehler attests that he always filled an inmate's request for books/publications from the law library as long as the material was available, and that he never threw away or intentionally disregarded an inmate's request for legal materials. Buehler further attests that



8

all SMU inmates have access to paper, pen and envelopes, although because of increased security measures in the SMU, those inmates have certain restrictions on the number of documents they can possess at one time. Buehler attests that SMU inmates are given an ample supply of paper, envelopes and one felt tip marker every other week. Buehler otherwise confirms much of the factual information concerning the operation of the law library as are set forth in Najjar's affidavit. <u>See generally</u>, Buehler Affidavit.

  The Defendants have also provided an affidavit James Brennan, who attests that he is the Assistant Division Director of Inmate Records for the Department of Corrections. Brennan attests that during the time period relevant to the allegations to the complaint, Plaintiff was housed in the SMU at PCI, which is a housing unit for inmates who have been charged with violent and/or serious behavioral issues committed while in the general population. Brennan attests that the SMU is a control unit designed to control inmate behavior and to maintain internal security, and that inmates assigned to the SMU at PCI are the most violent, dangerous, and disruptive inmates at PCI, and who pose serious security risks to other inmates and to Corrections personnel. Brennan attests that the operation of the SMU is governed by SCDC Policy OP-22.12, a copy which is attached to his affidavit.

  Brennan further attests that, according to SCDC records, Plaintiff is serving a sentence for murder and kidnapping, as shown by the sentencing sheets attached to his affidavit. Brennan attests that pursuant to S.C. Code Ann. § 23-3-430(c)(15), a person who has been convicted or pleads guilty to kidnapping is required to register with the sex offender registry, except when the court makes a finding on the record that the offense did not include a criminal sexual offense or an attempted criminal sexual offense. Brennan attests that there is no information on Plaintiff's



9

sentencing sheet (attached to his affidavit) or in any other information received by the SCDC indicating that Plaintiff meets this limited exception. Therefore, Plaintiff is listed in the SCDC system as someone who must register as a sex offender. See generally, Brennan Affidavit, with attached Exhibits.

The Defendant Florence Mauney submitted an affidavit wherein she attests that she is the Associate Warden at PCI. Mauney attests that inmates within the SCDC are separated into various classifications based on levels of security and other factors, with inmates in the general population having greater privileges than inmates housed with high security classifications, such as the SMU. Mauney attests that the SMU is a housing unit for inmates who have had serious and/or violent behavior issues while housed within the SCDC, and is a control unit designed to control inmates behavior and to maintain internal security. However, if inmates housed in the SMU can correct their behavior and comply with all SCDC policies and regulations, then they can be returned to the general population.

Mauney attests that general population inmates can enter and use the law library at PCI during certain time periods, but that inmates housed in the SMU are in a higher security dormitory and are not allowed to leave the SMU wing of the Institution except on a very limited basis. Further, because of security concerns and their higher security classification, SMU inmates are not allowed to enter the law library at PCI. Mauney further attests that all inmates at PCI, including inmates housed within the SMU, have access to the materials in the law library as specified in SCDC Policy/Procedure No. GA-01.03. All inmates also have access to paper, pen and envelopes for their personal use as well as for use with legal issue.

Finally, Mauney attests while Associate Warden, she only had general oversight of the



10

Education Department with supervisory authority over the employees within that department, and had no direct involvement with the issues outlined by Plaintiff in his complaint. See generally, Mauney Affidavit.

An affidavit has also been submitted by Nancy Merchant, who attests that she is the Postal Director in the mail room at PCI. Merchant attests that all inmates at PCI, including SMU inmates, have access to the internal and external mail system. The internal mail system is processed daily, with mail placed in the system generally being delivered to the recipient the following business day. Merchant attests that all inmates are able to send grievances, requests to staff, correspondence, etc. to other areas of PCI through the internal mail system.

Merchant attests that the external mail system is processed daily, and that all inmates at PCI, including SMU inmates, are permitted to mail any amount of legal mail as needed regardless of their indigent status. Merchant has attached a copy of SCDC Policy P.S. 10.08 [Inmate Correspondence Privileges] to her affidavit as an exhibit, and attests that her department processes the mail at PCI in a timely manner and that she has never intentionally disregarded or failed to process any internal or external mail. See generally, Merchant Affidavit, with attached Exhibit.

The Defendant Miriam Cocciolone has submitted an affidavit wherein she attests that she is the Inmate Grievance Coordinator at PCI, and that her office is responsible for processing grievances filed by PCI inmates. Cocciolone attests that she processes grievances in accordance with SCDC policies, and that she has never ignored or destroyed any grievance. Cocciolone attests that if a grievance is filed outside the time deadline, she will let the inmate know that the grievance was untimely filed, but that she always gives inmates the benefit of the doubt, and if there is no date mentioned on the grievance or if it is unclear exactly when the alleged event occurred, she will



11

process the grievance.

Cocciolone attests that if she is aware that an inmate has a pending grievance for a particular subject matter, she may not process a second grievance complaining about the same subject, but that if there is any question as to whether an inmate already has a grievance pending for the same matter, she will process the additional grievance. Cocciolone further attests that she makes recommendations as to whether to process grievances, but has no decision making authority in regard to the subject matter of grievances. That authority rests with the Warden and Associate Warden. See generally, Cocciolone Affidavit.

In opposition to the Defendants' motion, Plaintiff has attached three (3) affidavits to his memorandum opposing summary judgment. The first is an affidavit from himself (un-notarized) wherein Plaintiff "attests" that he is a prisoner confined in the SCDC, and that SCDC law libraries do not contain any books/cases after 2003. Plaintiff further attests that this has an adverse effect on pending actions, and that the Defendants "consciously choose to do nothing about it."

Plaintiff has also submitted an affidavit from John Green, who attests that he is an inmate at the Lee Correctional Institution. Green attests that he has repeatedly attempted to mail out legal mail but has been refused access to the courts because of his indigent status. Green further attests that he has been late filing documents and has missed deadlines because of the mail room refusing to mail his legal mail. Green also attests that the law library is deficient, and does not contain material past 2003, which hinders his ability "to effectively advocate my case." See generally, Green Affidavit.

Plaintiff has also submitted an affidavit from Demetrio Sears, who attests that he is an inmate at LCI who regularly visits the Institution law library. Sears attests that on January 10,



2010, he filed a motion in a PCR action he was involved in. Sears attests that at that time he was housed in the SMU, and that the staff denied him "legal material and access to the law library." Sears also attests that when he did contact the law library, they did not have the case he needed as the law library does not contain material past 2002-2003. Sears attests that his motion was denied because of this. Sears also attests that he has on several occasions attempted to mail out legal mail, but has been denied "for no other reason [other] than budget concerns." See generally, Sears Affidavit.

Finally, in addition to the attachments to his response to the Defendants' motion for summary judgment, Plaintiff also filed several documents with the Court on March 9, 2010. While the purpose of this filing is not clear, the undersigned has considered these documents in evaluating the summary judgment motion. These documents include an affidavit from the Plaintiff reiterating his claims about the prison law libraries, citing specifically the case of State v. Gentry, a state case which was not decided until 2005 but of which he had no knowledge because the materials in the law library do not go past 2003. See State v. Gentry, 610 S.E.2d 494 (S.C. 2005). Plaintiff has also submitted a purported statement (unverified) from a "Sgt. B. Barnes" of the Perry Correctional Institution wherein he states that on or about October 9, 2009, some of the Plaintiff's legal work was misplaced; an unsigned statement by a Terell Bryan (inmate) detailing the trouble he had obtaining as much paper and envelopes as he wanted at the McCormick Correctional Institution (although the mail room staff apparently worked with him to resolve his situation); and an affidavit from Justin Henderson wherein this inmate attests that he is denied legal supplies and law books on a "consistent basis". Henderson further attests that the law library at PCI contains no books newer than 2003, and that although he has complained to several of the Defendants, including Prison Director Jon Ozmint, "they don't do anything about the problem."



13

Plaintiff has also submitted a copy of a memorandum to him from the Defendant Peele, a staff attorney with the Department of Corrections, dated August 26, 2009, discussing parts of SCDC Policy PS-10.08 [Inmate Correspondence Privileges].[6] This memorandum cites to Section 4.2 of that policy, which provides that all indigent inmates regardless of custody status will be provided with one pencil (which will be exchanged for a new pencil when it wears out), sixteen sheets of paper, and two date stamped envelopes on a monthly basis, for which the inmate's account will not be debited. The policy further provides that inmates will be permitted to use these materials for general, legal or privileged correspondence, but the limit given for general correspondence will not be increased. The policy further provides that if additional supplies are needed for legal mail., they will be provided on a limited basis, but that no handmade envelopes will be allowed to be used to send mail outside of the institution. With respect to legal supplies and materials, inmates are provided with writing paper, envelopes, a writing instrument, and other materials necessary for legal correspondence in accordance with Policy PS-10.08, OP-22.12 [Special Management Unit], OP-22.11 [Maximum Security Unit], and OP-22.16 [Death Row]. The memorandum concludes by stating that the SCDC is trying to provide each and every inmate proper access to the courts, but that legal supplies are not unlimited.

Plaintiff has also submitted several copies of law book request forms from various dates going back to 2005, some Request to Staff Member forms where Plaintiff continues to request additional legal materials as well as materials from the law library, and copies of several inmate

---

[6]This memorandum was apparently in response to a Request to Staff Member form submitted by the Plaintiff on October 20, 2009 (dated October 19, 2009), wherein Plaintiff complained that he was still "not getting sufficient legal supplies to litigate my 9 pending cases. 10 envelopes, 1 pen & 30 sheets of paper every 14-18 days is not adequate . . . . I need 15 envelopes, 2 pens & 75 sheets of paper every 2 weeks to properly litigate my cases".

14



grievances filed by the Plaintiff, including one dated September 2009 where Plaintiff was advised that no law clerks would be visiting the SMU and that the administration was asking the General Counsel's Office to provide Plaintiff with a reference package on how to use the law library. In another response to a grievance dated September 24, 2009, Plaintiff is advised that due to budgetary constraints, the Education Coordinator must use discretion in determining what constitutes a reasonable amount of supplies on an individual basis, and that as a general rule a maximum of thirty sheets of paper will be provided every two weeks, except in extraordinary circumstances. Plaintiff is further advised that the Defendant Najjar's records indicated that he was receiving supplies as required.

In yet another response dated September 24, 2009, Plaintiff is advised that materials not contained in the PCI law library are ordered from the General Counsel's Office when appropriate and as required. In a grievance response dated December 2, 2008 Plaintiff is advised that due to budgetary constraints the Education Coordinator must use discretion in determining what constitutes a reasonable amount of supplies on an individual basis, and that duplicate requests will not be filled. Most of these exhibits also reflect the Department's efforts to continue working with the Plaintiff. For example, in a response to a Request to Staff Member dated August 12, 2008, Plaintiff is advised that Buehler had received his most recent request and had advised that he would try to get Plaintiff his supplies by the end of the week. In response to another Request to Staff Member on March 24, 2008, Plaintiff was advised that, while Buehler did not have any manilla envelopes at the time of his request, he had some now.

Some additional affidavits from inmates attesting to their not getting the amount of legal supplies they want are also enclosed, as are several sheets of copy and material requests and a



memorandum to the Plaintiff from the Defendant Cocciolone dated May 15, 2008 referring Plaintiff to new correspondence Policy PS-10.08, ¶ 4.2.3, which provides that additional supplies for legal mail will be provided on a limited basis. See generally, Plaintiff's Exhibits.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

Prisoners are entitled to reasonable access to the courts. Wolff v. McDonnell, 418 U.S. 539 (1974); Bounds v. Smith, 430 U.S. 817, 828 (1977). However, in order to pursue a claim for denial of access to the courts, Plaintiff must not only allege facts sufficient to show that he was denied access to the courts, but that he suffered some actual injury or specific harm. Magee v.

16



Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993). Plaintiff's claim fails to meet this standard on several levels.

First, Plaintiff has failed to show that he is being denied adequate access to legal materials and/or resources for asserting legal claims. The fact that Plaintiff's status as an SMU inmate prevents him from physically going to the prison law library, whether at his former institution or at his present institution[7], does not by itself set forth a valid constitutional claim, as Plaintiff has no constitutional right of access to a law library per se; nor is the Department of Corrections required to provide Plaintiff with a paralegal to help him research and prepare his legal documents. Rather, the constitutional right is for meaningful access to the courts to bring challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 351 (1996); Giarratano v. Johnson, 521 F.3d 298, 305-306 (4th Cir. 2008); cf. Castro v. Chesney, No. 97-4983, 1998 WL 150961 at * 3 (E.D.Pa. Mar. 31, 1998). Here, to compensate for Plaintiff's restricted custody status, Plaintiff may request legal material from the library which is then provided to him in his cell twice a week, as is demonstrated by Plaintiff's own exhibits. There is nothing unconstitutional about Plaintiff being required to review legal materials in his cell as opposed to in a law library.

Plaintiff's claim about being provided with an inadequate amount of pens, paper and envelopes is also without merit. The Defendants have submitted evidence to show that SMU inmates are given free of charge an ample supply of paper, envelopes, and one felt tip marker; that inmates

---

[7]When Plaintiff first filed this action, he was incarcerated at PCI. He has now been transferred to LCI, but remains in the prison SMU. See Complaint, p. 2; Court Docket No. 19 (Change of Address Request).



17

can also purchase additional supplies if they have available funds; and that if an inmate can demonstrate a need for additional papers or envelopes for legal purposes, then that material is provided even if the inmate has no funds available. While the Defendants concede that the Department cannot provide inmates with an *unlimited* amount of such materials, this does not amount to a constitutional violation. <u>Lockamy v. Dunbar</u>, No. 08-150, 2010 WL 412816, at * 17-18 (E.D.Tex. Jan. 28, 2010)["The right of access to legal materials does not mean that inmates are entitled to receive an unlimited supply of such paper and writing implements"]; <u>Parker v. Ritter</u>, No. 08-737, 2009 WL 3346739, at * 1 (D.Colo. Oct. 15, 2009)["[P]risoners do not have an unlimited right to free postage [and supplies] in connection with the right of access to the courts"], citing <u>Twyman v. Crisp</u>, 584 F.2d 352, 359 (10th Cir. 1978). The question is whether the evidence shows that Plaintiff has been harmed in his ability to initiate and pursue litigation based on a denial to him of legal materials, including writing materials, postage, etc. There is no indication in the case at bar that Plaintiff has been hindered in his ability to pursue this case, nor does the evidence before the Court show that a lack of access to writing paper, envelopes, or like materials has resulted in Plaintiff being denied adequate access to the courts.

Plaintiff's own exhibits show that he was receiving more such material than the usual allotment of two envelopes, one pencil, and sixteen sheets of paper per month. Plaintiff was instead receiving ten envelopes, one pen, and thirty sheets of paper every fourteen to eighteen days. However, Plaintiff did not deem this to be sufficient: he was demanding fifteen envelopes, two pens, and seventy-five sheets of paper every two weeks. <u>See</u> Court Docket No. 51, p. 24. Being entitled to reasonable access to the courts does not, however, mean that Plaintiff is entitled to become a litigation machine, and nothing in the evidence submitted to the Court by either the Defendants or



18

the Plaintiff creates a genuine issue of fact as to whether denial of the amount of *additional* excess supplies being requested by the Plaintiff amounted to a violation of his constitutional rights, particularly in light of the fact that he was already receiving a greater allotment of supplies than the normal inmate. Lockamy, 2010 WL 412816 at 17-18; Ferola v. Director, South Carolina Department of Corrections, No. 03-2918, 2006 WL 2475396, at * 3 (D.S.C. Aug. 24, 2006)[Finding that courts must balance prisoner's rights with the economic concerns of States, and that the constitutional right of access to the courts does not require that prisoners be provided with unlimited free postage or like materials]; White v. White, 886 F.2d 721, 723 (4th Cir. 1989)["Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations"]. Plaintiff's complaint that he is not being provided with adequate copies and similar assistance is also without merit. See generally, Hendrix v. Galloway, No. 03-740, 2004 WL 3090229 (D.S.C. 2004); In re Sawyer, 76 F.3d 375 (4th Cir. 1996); Zulu X v. Moore, C/A No. 6:95-1198-3AK (D.S.C. January 31, 1996); Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1991) [there is no constitutional right to free photocopies]; 871 F.Supp. 772, 782 n. 19 (M.D.Penn. 1994) [there is no constitutional right to free photocopies]; Harrell v. Keohane, 621 F.2d 1059, 1061 (10th Cir. 1980); Dugar v. Coughlin, 613 F.Supp. 849, 853 (S.D.N.Y. 1985) [indigent litigants are not entitled to free photocopies or unlimited free postage (prisoner case)]; Carroll v. North Carolina Dep't of Corrections, 91-7562, 1991 WL 158146 (4th Cir. 1991) [pro se prisoners may handwrite legal papers to submit for submission to the court].

While not directly related to his access to the courts allegations, Plaintiff's complaint in his pleadings that the Defendants are denying him the right to receive books, magazines and newspapers, all of which are available in the general population, is also without merit. As noted, Plaintiff is an SMU inmate, and as long as restrictions or regulations placed on such inmates are



19

reasonably related to a legitimate penological objective, they should be upheld by the Court. Turner v. Safley, 482 U.S. 78, 89 (1987) ["...when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penalogical interests"]. The Defendants have submitted evidence to show that inmates housed in the SMU are the most violent, dangerous and disruptive inmates in the institution and pose serious security risk to other inmates and correction personnel. These are control units designed to control inmate's behavior and to maintain internal security. Restrictions on these inmates also serve as an incentive for them to correct their behavior and comply with all SCDC policies and regulations, whereby they can then be returned to the general population. See Brennan and Mauney Affidavits.

The evidence reflects that SMU inmates are allowed to have only a limited amount of materials in their cells (to include an amount of legal material that would fit into a fifteen inch by twelve inch by ten inch box), they are not allowed to receive newspapers, and can have only one book or magazine at a time and a limited number of photographs. See Exhibit [SCDC Policy OP-22.12]. There is nothing unconstitutional about these requirements as applied to inmates such as the Plaintiff. Cf. Vasquez v. Frank, No. 05-528, 2005 WL 2740894 at *12 (W.D.Wisc. 2005) ["[R]estrictions on a[n] inmate's receipt of...photographs as part of an incentive program were reasonably related to the prison's legitimate interest in promoting good behavior"], aff'd in part, vacated in part (on other grounds), 2006 WL 3623044 (7th Cir. Dec. 13, 2006); Ramirez v. McCaughtry, No. 04-335, 2005 WL 2010173 (W.D.Wisc. 2005) [upholding policy that restricted access to newspapers, magazines, and photographs to inmates in segregation as part of an incentive system for good behavior]; see also Corey v. Reich, No. 02-2801, 2004 WL 3090234, aff'd, 2004 WL 1730327 (4th Cir. 2004), cert. denied, 544 U.S. 924 (2005); Incumaa v. Ozmint, C/A No. 0:03-2776-22BD; see also Beard v. Banks,



20

548 U.S. 521 (2006) [system of suspension of privileges valid means of attempting to control behavior]; Daigre v. Maggio, 719 F.2d 1310, 1313 (5th Cir. 1983)["To promote the important government interest in maintaining discipline, officials must have available sanctions that impose incremental disadvantages on those already in prison. Left free to write to anyone in the world and to receive literature of any kind, a prisoner might find punitive isolation desirable, offering solitude and leisure as an alternative to the ordinary conditions of prison work and life. Thus, a narrower restriction on first amendment interests would likely prove ineffective in maintaining discipline"]; Gregory v. Auger, 768 F.2d 287, 290 (8th Cir. 1985) [restrictions on certain types of correspondence, including junk mail, newspapers and magazines serve a legitimate penalogical objective of "deterrence of future infractions of prison rules"]; Savko v. Rollins, 749 F.Supp. 1403, 1409 (D.Md. 1990) [Limitation on the amount of in-cell religious reading material contained in prison regulation is constitutional under Turner standards]; In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ["Prison officials 'should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'"] (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)).

Plaintiff's most serious claim would seem to be the evidence he has submitted showing that the prison law libraries in the SCDC system do not stock legal materials more current than 2003 editions. The law is ever changing, and the inability of inmates such as the Plaintiff to access reasonably current materials could constitute a denial of access to the courts under some circumstances. Such is not the case here, however, as Plaintiff has set forth only the most general and conclusory allegations of harm, such as that he was "unable to properly litigate pending court cases

21

and as a result . . . said cases were dismissed." Plaintiff cites to no specific cases, nor does the evidence submitted show a specific harm suffered by Plaintiff in any specific case.[8] Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) [Dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury]; Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995)["Complaint must contain facts which state a claim as a matter of law and must not be conclusory"]; cf, Bretado v. Woodford, No. 07-4612, 2008 WL 5099640 at * 2 (C.D.Cal. Dec. 2, 2008)[Petitioner failed to show that an inadequate law library prevented him from timely filing a petition where he only made general allegations about the materials having not been updated, but failed to "identify any specific, 'essential' materials that were inadequate, *and* [did] not explain why those inadequate materials (whether online or in hard copy) prevented him from filing a timely petition."] (emphases added); Woods v. St. Louis Justice Center, No. 06-233, 2007 WL 2409753 at * 8 (E.D.Mo. Aug. 20, 2007)["Even if a prisoner can show a complete and systematic denial of access to a law library or legal assistance- which petitioner has alleged with respect to the closure of the Justice Center law library for a period of seven months - he must still demonstrate an actual injury to his efforts to pursue a nonfrivolous legal claim."] (citing Klinger v. Dept of Corrections, 107 F.3d 609, 617 (8th Cir. 1997)).

While Plaintiff does state in an affidavit that a criminal appeal he had pending was adversely affected because he did not know of the holding in State v. Gentry, he has submitted no evidence to support this claim. Plaintiff fails to identify what type of "appeal" he may have had pending in 2005, nor has he set forth any facts to show how his having knowledge of State v. Gentry

---

[8]Indeed, many of the legal documents Plaintiff has submitted as exhibits are for *other* prison inmates.

would have changed the outcome of any such appeal. See Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; see Lewis, 518 U.S. at 349-353 [Inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure at issue]. Therefore, since Plaintiff has failed to state a cognizable lack of access claim, this claim should be dismissed. Magee, 810 F.2d at 452 [Actual injury or specific harm required to maintain claim]; Johnson v. Reno Police Chief, 718 F.Supp. 36, 38 (D.Nd. 1989)["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would entitle the plaintiff to relief"]; Johnson v. Bank of America, No. 09-1600, 2010 WL 1542560, at * 2 (D.S.C. April 16, 2010)["Mere legal conclusions [are] not entitled to a presumption of truth"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

Finally, Plaintiff makes the conclusory assertions in his complaint that the Defendants are discriminating against him on the basis of his "race, religion, nationality, sex, income, political beliefs or other arbitrary categories", and that they have placed him in substantial risk of bodily harm and assault by other prisoners by labeling him a sex offender. Plaintiff has provided no evidence to support these allegations. In order to succeed on his failure to protect claim, Plaintiff would need to present evidence sufficient to show that a named Defendant displayed a deliberate or callous indifference to a specific known risk of harm to him. Pruitt v. Moore, No. 02-395, 2003 WL 23851094 at *9 (D.S.C. July 7, 2003) [only deliberate or callous indifference on the part of prison



23

officials to a specific known risk of harm states on Eighth Amendment claim], cert. denied, 2004 WL 232748 (4th Cir. 2004); Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]; Farmer v. Brennen, 114 S.Ct. 1970, 1979 (1994) [defendants must have engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result".]; see also Pressly v. Hutto, 816 F.2d 977 (4th Cir. 1987). Other than the general and conclusory statement in his complaint, however, Plaintiff has presented no evidence to show such deliberate or callous indifference on the part of any Defendant. See Miller v. Turner, 26 Fed.Appx. 560, 563 (7th Cir. Dec. 18, 2001)["The Plaintiff must . . . prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that the Plaintiff complained to prison officials about a *specific* threat to his safety."](emphasis in original); Bagola v. Kindt, 131 F.3d 632, 646 (7th Cir. 1997) ["Although prison officials need not intend that a known risk will actually harm an inmate, they must intentionally ignore this known risk in order to be liable under the Eighth Amendment."]; see also Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) [in order to state a constitutional violation, the deprivation alleged must not only be "objectively significantly serious", but the Defendant must also have acted with a "sufficiently culpable state of mind"]; Miller, 26 Fed.Appx. at 563 ["[A] 'mere possibility of violence' or the occurrence of a random act of violence is not sufficient to impose liability on prison officials"]. Further, to the extent Plaintiff contends a named Defendant, by placing him on the sex offender registry, defamed him or engaged in negligent supervision, those are not claims that can be pursued in a § 1983 case. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state

24

law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care].

Plaintiff's mere conclusory allegation that the Defendants are discriminating against him on some basis (Plaintiff did not actually identify a specific basis), standing alone and without any supporting evidence, is also not sufficient to present a viable claim or to withstand a properly supported summary judgment motion. Cf. Buford v. Sutten, No. 04-959, 2005 WL 756092 at * 3 (W.D.Wis. Mar. 29, 2005)["An individual seeking relief on a claim of race discrimination under the equal protection clause must allege facts suggesting that a person of a different race would have been treated more favorably."](citing Jaffe v. Barber, 689 F.2d 640, 643 (7th Cir. 1982)); Wilson v. Wigen, No. 96-0620, 1997 WL 158117 at * 3 (E.D.Pa. Mar. 31, 1997). See Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986)["(Plaintiff's) conclusory allegations of...discrimination are not sufficient to establish liability."]; Jaffe v. Federal Reserve Bank of Chicago, 586 F.Supp. 106, 109 (N.D.Ill. 1984) [A plaintiff "cannot merely invoke his race in the course of the claim's narrative and automatically be entitled to pursue relief"]; May v. Baldwin, 895 F.Supp. 1398, 1410 (D.Or. 1995)["Though prison authorities may not discriminate against inmates on the basis of their race, plaintiff offers no evidence that he has been mistreated by prison officials because he is black."](internal citation omitted), aff'd, 109 F.3d 557 (9th Cir. 1997), cert. denied, 522 U.S. 921 (1997); see Papasan, 478 U.S. at 286; Morgan, 829 F.2d at 10, 12. This claim is therefore subject to dismissal.


### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary

25

judgment be **granted,** and that this case be dismissed.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 22, 2010

Charleston, South Carolina



26

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

